## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| AB STAFFING SOLUTIONS, LLC | ) | |
| and | ) | |
| BAY AREA ANESTHESIA, LLC, d/b/a WORLD WIDE MEDICAL, LLC | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 3:22cv00032 |
| ASEFI CAPITAL, INC., d/b/a ACI FEDERAL | ) | |
| Serve: United States Corporation Agents, Inc. 4445 Corporation Lane, Suite 259 Virginia Beach, VA 23462 | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT

Plaintiffs, AB Staffing Solutions, LLC ("ABSS") and Bay Area Anesthesia, LLC, d/b/a World Wide Medical, LLC ("World Wide") (collectively the "Plaintiffs"), by counsel, state as follows for their Verified Complaint against the Defendant, Asefi Capital, Inc., d/b/a ACI Federal ("ACI"):

### INTRODUCTION

1. This matter arises out of a contract between ABSS, World Wide, and ACI for the provision of COVID-19 Surge Medical Staffing Services to the States of Idaho and Washington to alleviate hospital staffing shortages caused by the coronavirus pandemic. The parties' agreement specifies that each team member will invoice the Government separately. Here, ACI

undertook the invoicing for all team members but has failed to process invoices properly, has failed to disburse funds to ABSS and World Wide, and has failed to account for and reconcile the discrepancies in its accounts for many months.  The result is that Plaintiffs have been forced to advance funds to their medical staffing personnel for many months without receiving payments for the staffing services provided.  Currently, the amounts owed to Plaintiffs exceed $60 million.  ACI's acts have caused severe negative impacts on Plaintiffs' ability to continue providing services to the States and has threatened Plaintiffs' businesses. Plaintiffs thus have come to this Court after attempts at resolution with ACI have failed and seek monetary damages as well as injunctive, declaratory, and other relief as set forth below.

## PARTIES, JURISDICTION, AND VENUE

2. ABSS is a limited liability, family-owned, company organized under the laws of Arizona with its principal place of business at 3451 S. Mercy Road, Suite 102, Gilbert, Arizona. ABSS' only member is a trust, whose beneficiaries are Stan Rashkin and Martha White, residents and domiciliaries of Arizona, and whose trustee is Stan Rashkin, a resident and domiciliary of Arizona.

3. World Wide is a woman-owned small business organized as a limited liability company under the laws of Arizona with its principal place of business at 3451 S. Mercy Road, Suite 103, Gilbert, Arizona.  World Wide's only member is Martha White, who is a resident and domiciliary of Arizona.

4. ABSS and World Wide provide healthcare staffing solutions and have developed broad experience and technical knowledge related to contract nursing, allied health, therapy and physician services to Government and Commercial facilities throughout the country.

5. ACI is a Delaware Corporation with its principal office at 500 Lafayette Blvd., Suite 200, Fredericksburg Virginia. Upon information and belief, ACI is a professional services firm that, among other things, contracts with the Government to provide healthcare solutions to the armed forces and various federal agencies.

6. This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and ACI are citizens of different states and the amount in controversy, inclusive of the amount required to perform the injunctive relief sought by Plaintiff, exceeds $75,000.

7. This Court has personal jurisdiction over ACI because it is registered to do business in Virginia. Moreover, ACI directly transacts business in Virginia and, therefore, can reasonably expect to be subject to jurisdiction in Virginia.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this judicial district and ACI did business in this District when it committed the unlawful acts.

## FACTUAL ALLEGATIONS

A. **The Contractor Teaming Arrangement**

9. At all times relevant to the matters alleged in this complaint, ABSS, World Wide, and ACI each held a contract issued under the General Services Administration ("GSA") Federal Supply Schedule ("FSS") program. Their contracts were issued under Federal Supply Schedule 6211 which covers vendors who provide a variety of healthcare services. Schedule 6211 is administered by the Department of Veterans Affairs ("VA") pursuant to authorization granted by the GSA.

10. The FSS program, in effect, prescreens vendors for both technical capability as well as to establish government-wide pricing. *See generally* 48 C.F.R. § 38.101(a). Contracting agencies are authorized to issue requests for quotation ("RFQ") to schedule vendors to perform work specified in what will be denominated as a task order, which sometimes also are colloquially referred to as purchase orders.

11. Contracting agencies also may issue RFQs to establish a Basic Ordering Agreement ("BOA"). Under the Federal Acquisition Regulations ("FAR"), a BOA is defined as "a written instrument of understanding, negotiated between an agency, contracting activity, or contracting office and a contractor, that contains (1) terms and clauses applying to future contracts (orders) between the parties during its term, (2) a description, as specific as practicable, of supplies or services to be provided, and (3) methods for pricing, issuing, and delivering future orders under the basic ordering agreement. **A basic ordering agreement is not a contract**." 48 C.F.R § 16.703(a) (emphasis added).

12. The GSA encourages the use of a special ordering procedure in which schedule contract holders enter into a Contractor Teaming Arrangement ("CTA") where the contractors join forces to compete for and perform orders placed under the Schedule program. A unique feature of this procedure is that the order is issued to the team but each member of the team remains in direct privity with the Government in all respects. The relationships and obligations of the parties are to be established in a written agreement that is submitted along with the CTA's team proposal for a particular contract opportunity.

13. Effective June 11, 2020, ABSS, World Wide and ACI entered into a CTA for the purpose of combining their respective capabilities and leveraging their FSS contracts to submit a proposal to the Department of Homeland Security, Federal Emergency Management Agency,

under Solicitation No. R10AASTXE0001, Hospital Support Services Basic Ordering Agreement. A copy of the CTA is attached as **Exhibit A**.

14. Pursuant to the scope of the Solicitation, "FEMA may require temporary hospital support supplies and services to accommodate an increase in patient population due to the Coronavirus (COVID-19) Pandemic in the states of Washington, Oregon, Idaho and Alaska. If requested, facilities would need to accommodate Non-COVID-19 and/or COVID-19 patients due to a lack of bed space in the existing medical system." (Solicitation No. R10AASTXE0001, located at https://sam.gov/opp/264f911550a0435f9e33de1d978154f7/view.)

15. ACI was designated the "Team Lead" under the CTA. Ex. A at ¶ 9. As Team Lead, ACI was responsible for "managing the overall contract and project management; providing consolidated status reporting to FEMA with support from the Team Members; providing a single point of contact to Hospital Support Services BOA to resolve technical and performance issues." Id. Each team member, however, retained "privity of contract directly with the Government." Id. at ¶¶ 4, 9(f).

16. Under the CTA, the parties teamed to meet FEMA's need for hospital support services to accommodate the increase in patient population due to COVID-19 in Washington, Oregon, Idaho, and Alaska.

17. The BOA was awarded to the CTA effective August 19, 2020. Given that the BOA was issued under a CTA, each team member was separately identified on the BOA; whereas, ordinary subcontractors were not.

18. Ordinarily, the right to issue RFQs to schedule contract holders is limited to federal government agencies. However, as was the case under the FEMA BOA, the aforementioned States were authorized to enter into contracts with the CTA members under the FSS program.

5

19. Following the issuance of the BOA, ACI, in its capacity as the Team Lead under the CTA, pursued contract opportunities to provide services to the States of Idaho and Washington.

20. Idaho and Washington awarded purchase orders to the Team on September 1, 2021 and September 27, 2021, respectively. These orders, having been issued under the BOA, are subject to the CTA.

**B. ACI Materially Breaches the CTA By, Among Other Things, Failing to Timely Process More Than $60 Million of Plaintiffs' Invoices.**

21. The CTA provides that each Team Member is to generate invoices "separately" to the Government for "the services rendered from each [Member's] FSS Schedule Contract." Ex. A at ¶ 9(f). Notwithstanding this, ACI insisted on invoicing for <u>all</u> Team Members and has refused to relinquish those duties.

22. ACI, as Team Lead, has materially breached fundamental duties it owed to ABSS and World Wide. These breaches include, among others, ACI's failure to provide full transparency to ABSS and World Wide as it relates to billing, receipt of monies from the States of Idaho and Washington, and how these monies were distributed. The breaches further include the failure to submit invoices to the contracting agencies following ABSS' and World Wide's transmission of same to ACI.

23. ACI has failed to perform the most basic of functions to ensure complete invoicing and otherwise perform as a fiduciary relative to ABSS and World Wide. These failures to perform have caused and are continuing to cause grievous harm to ABSS and World Wide due to the severe shortage in cash-flow caused by ACI's failures.

24. As of January 19, 2022, and as a result of ACI's failures and breaches, ABSS has a staggering volume of invoices that are in arrears or will be soon. $34,574,084.61 is past due based on Net 30-day terms of payment, and the total amount currently due is $57,369,095.26.

6

25. World Wide's invoices are also in arrears. As of January 19, 2022, $2,888,216.00 is past due based on Net 30-day terms of payment, and the total amount currently due is $6,002,883.36.

26. In total, as of January 19, 2022, ACI has invoices from ABSS and World Wide totaling $63,371,978.62 that are due or will become due in the next thirty (30) days.

27. ACI does not, and has never, disputed the validity of Plaintiffs' invoices, except in minor circumstances involving a hard to read receipt. Rather, the parties are in this position because ACI cannot keep up with the volume of billings resulting from the parties' work under the BOA orders.

28. ACI assumed the responsibility to ensure that it is billing each week for all personnel on assignment. ACI has complete data in its possession that indicate exactly who is on assignment and who these contractors work for. ABSS and World Wide have provided everything ACI needs to immediately process Plaintiffs' invoices.

29. Ultimately, however, ACI has proven to be inept at billing and invoicing. Even the States and GSA have complained about ACI's billing and invoicing practices. Plaintiffs have attempted to work with ACI to reconcile their invoices, but ACI has not been forthright with the details and status of its submissions to Washington and Idaho.

30. Upon information and belief, when Plaintiffs submit invoices to ACI, ACI includes Plaintiffs' invoices along with invoices generated by ACI for the work ACI performed. ACI submits both these invoices to Washington and Idaho. However, the ACI portion of its invoices are flawed and do not result in full payments from the States due to their flaws. But Plaintiffs' invoices are clean and proper and would result in full payment.

7

31. ACI should pass on payments to Plaintiffs in full and should not pay its own invoices in full because the invoices for its own work were faulty. But, upon information and belief, that hasn't happened. Instead, ACI is retaining Washington and Idaho payments that were intended to be payments for Plaintiffs' invoices and is using those monies to fund ACI's operations by paying its subcontractors and itself first before paying Plaintiffs.

32. ACI is short-paying, or paying less than the full amount of Plaintiffs' invoices to Plaintiffs, without explanation and without any statement as to what issues with Plaintiffs' invoices would have resulted in a short payment from the States.

33. ABSS and World Wide have offered repeatedly to take the burden of billing and collections for their services, but ACI has refused these offers.

34. ACI has refused to allow ABSS and World Wide to submit invoices directly to the Government, as the parties are entitled to do under the CTA.

35. In addition, ACI has failed to fully account for the status of the invoices that have been issued by ABSS and World Wide. For example, ABSS' accounts receivable that were provided to ACI weeks ago disclosed a major discrepancy between what ABSS showed as being owed and ACI's internal records.

36. ACI's performance on the administrative side as team lead has been an utter failure, and ACI's deficiencies are irreparably harming ABSS' and World Wide's businesses and client goodwill.

37. ACI's inability to perform its basic invoicing function have left Plaintiffs in a cash-flow predicament that threatens their ability to continue providing staffing. Yet at the same time, the GSA has notified all the team members "that, if you fail to perform on the orders due to the outstanding invoices, the Government considers this issue a condition that is endangering

performance of the BOA and will cancel the BOA with 30 days' notice in accordance with its terms.  If the BOA is cancelled for the previously stated reasons, then the Government will record these negative actions in your Contract Performance Ratings (CPARs) for all CTA members should the performance of any orders be impacted."  (**Exhibit B**, GSA Jan. 5, 2022 Letter of Concern.)

38. The CPARs system is available to all federal contracting officers for them to review an offeror's past performance.  A negative CPARs report would be severely damaging in incalculable amounts to Plaintiffs, as such a report is posted for all to see and would have devastating effects on Plaintiffs' future contracting opportunities.

**C. The GSA Faults ACI's Invoicing Practices But ACI Ignores the GSA's Recommended Solutions.**

39. Plaintiffs have diligently raised these issues with ACI and have attempted time and again to work cooperatively with ACI to resolve the problems and formulate a solution acceptable to all parties, but ACI has refused to cooperate.

40. Indeed, Plaintiffs have engaged the assistance of the GSA which intervened "due to multiple complaints from both [ABSS and World Wide] and Washington State's Department of Health regarding ACI Federal's invoicing practices."  (**Exhibit C**, Dec. 21, 2021 Memorandum.)

41. Based on the GSA's review of the issues, it concluded that "[g]iven the ongoing payment issues, including issues expressed by the Washington State's Department of Health, **it is the General Services Administration's recommendation that all teaming partners bill Washington State and Idaho State individually**."  (Id. at 2 (emphasis original).)

42. The GSA based its recommendation "on the already agreed to terms of the CTA, the delinquent and inaccurate payments received by [Plaintiffs], as well as the ongoing payment issues and complaints of Washington State's Department of Health."  (Id.)

9

43. The GSA further noted that to fulfill its recommendation, "ACI Federal will need to suspend central billing, instead, as team lead, coordinate direct billing with Washington and Idaho for their partners. Any invoices that have not been paid by the customer states should be retracted, allowing AB Staffing and World Wide Medical to bill directly. In addition, ACI Federal should include teaming partners AB Staffing and World Wide Medical in their regular meetings with both Washington and Idaho to help improve communication and to ensure the structure and content of invoices meet Washington and Idaho's requirements. Lastly, ACI Federal must let Washington and Idaho know of the changes in payment structure." (Id.)

44. ACI has ignored and refused to heed the recommendation of the GSA, has continued to maintain control of all invoicing and collections, and the issues with invoicing and collection have not improved.

**D. ACI Ignores Plaintiffs' Recommended Solutions.**

45. Despite ACI's refusal to follow the GSA's recommendation, Plaintiffs have continued to attempt to reach a resolution with ACI, but their attempts have failed.

46. On January 10, 2022, ABSS proposed a potential two-part solution, informing ACI that ABSS had agreed to two actions: "1. Our attorney is creating an escrow agreement which calls for all payments from Idaho and Washington to flow to an independent 3rd party bank account. Based on reconciliation, ACI and ABSS would then jointly agree to distributions of the payment to the appropriate payees. Both parties would split the cost of the escrow agent. All future payments are to be handled this way. 2. ABSS will agree to generate all of the ABSS invoicing for ACI, with ACI's name on the invoice and at ACI's bill rates. ABSS would upload the invoices into the appropriate state system and provide copies of the invoices to ACI. As with all payments,

payment on these invoices would be handled through the escrow agreement." (**Exhibit D**, Jan. 11, 2022 email chain.)

47. ABSS further informed ACI that due to the cash flow issues caused by ACI, ABSS was being forced into a position where it would be required to remove its contractors from the job due to non-payment. (Id.)

48. ACI, in response to this email, did not address the proposed options of creating an escrow and allowing ABSS to take over the invoicing on behalf of ACI. Instead, it simply claimed that it was taking the situation "very seriously" and that it "added additional resources and reassigned job duties in an effort to remedy the issues at hand." (Id.)

49. But ACI's "additional resources and reassigned job duties" have not remedied the issues. Despite ACI's continued assurance that past due invoice payments will be collected and paid, there have not been any meaningful payments.

50. Furthermore, the GSA liaison has supported the proposal to establish a separate escrow account for invoicing and collections of all team members services to Washington and Idaho.

51. The GSA reached out to ABSS to "see if you were going to take the lead, as ACI suggested, on establishing an escrow account for payments for the Idaho and Washington contracts. The state of Washington just let me know that they're considering trying to ramp up support, but are now worried about putting additional cash flow burden on the partners. I would like to be able to tell them that via the escrow account, the increase in visibility and the distribution practices from use of that account should help mitigate this (as long as invoices are sent in a timely manner), but don't want to say that if that is no longer the case." (**Exhibit E**, Jan. 7, 2022 email chain.)

11

52. ABSS responded that "[w]e are happy to facilitate the escrow agreement for all future payments made by the states. By virtue of having an escrow agreement, the states will ultimately need to change the remittance information that they use to wire funds (once we establish the escrow bank account)." (Id.)

53. ABSS further informed the GSA that this ability to direct bill to the States of Washington and Idaho and then receive payment through an escrow account would relieve cash-flow concerns because ABSS could then finance the receivables, explaining that "[a]s to state concerns with cash flow burden, we have reached an agreement with our bank. For all work that we can direct bill to the end using client (the states), the bank will finance. They will not finance future work through ACI due to the $16M in [unbilled] work that ACI missed." (Id.)

54. In order to facilitate the ability of ABSS and World Wide to bill directly to the States, the GSA recommended ACI provide its team members with access to its billing portal and allow its team members to submit the invoicing under ACI's format.

55. GSA explained this as follows: "As ACI agreed to direct billing in the CTA agreement and controls the single point of entry for billing to Washington state, and has agreed to allow AB Staffing and World Wide Medical to support invoicing in order to have full transparency of invoices with the states, ACI should grant AB Staffing access to their billing portal with Washington state. Washington state can accept and pay bills so long as they are received via 'Team ACI' using ACI Federal's account. As such, this would allow AB Staffing to direct bill via ACI's account, giving them direct access to the state. In this model, ACI is still the POC and can continue to discuss / manage any discrepancies or questions that Washington state has in regards to invoices they have received." (Id.)

56. ACI, however, has refused to accept Plaintiffs' and the GSA's recommended solutions.

57. Because of ACI's failures and refusal to abide by the GSA recommendation to allow Plaintiffs to process their own invoices, Plaintiffs are faced with a severe cash-flow shortage and are left in position where they will no longer be able to provide staffing to the hospitals in Washington and Idaho. They have been forced into the untenable position of having to walk off the job, which could cause Plaintiffs to be in default of their Government contracts.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

58. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as though set forth in full herein.

59. Plaintiffs and Defendant are parties to the CTA, which is a valid and enforceable contract.

60. Plaintiffs have complied with their obligations under the CTA.

61. ACI's duties under the CTA required it to manage the overall contract and project management. In addition, ACI assumed the duty of invoicing and collections for all team members.

62. Furthermore, ACI, having failed to properly invoice and collect payment, has nonetheless prevented Plaintiffs from invoicing directly, which is a breach of the CTA.

63. As a result of ACI's breaches, ABSS has been damaged in the amount of $57,369,095.26, which damages continue to accrue, plus interest thereon to the date of entry of judgment.

13

64. As a result of ACI's breaches, World Wide has been damaged in the amount of $6,002,883.36, which damages continue to accrue, plus interest thereon to the date of entry of judgment.

65. As a result of ACI's breaches, Plaintiffs have suffered consequential damages as a result of increased financing costs to address the cash-flow issues caused by ACI and the loss of additional work opportunities from the States due to ACI's invoicing issues.

66. In addition, Plaintiffs have suffered and will continue to suffer irreparable harm and severe damage to their businesses, including loss of customer relationships.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

67. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as though set forth in full herein.

68. As the team lead under the CTA, ACI owed fiduciary duties to ABSS and World Wide, including the duty to exercise the utmost good faith and undivided loyalty toward Plaintiffs, to act with the utmost care in its execution of its obligations and duties under the CTA.

69. ACI breached its fiduciary duties to Plaintiffs by its actions and omissions alleged herein, including among other things, failing to fulfill its obligations and responsibilities for invoicing and collections and refusing to turn over its invoicing and collection responsibilities to Plaintiffs.

70. As a result of ACI's breach of its fiduciary duties, AB Staffing has been damaged in the amount of $57,369,095.26, which damages continue to accrue, plus interest thereon to the date of entry of judgment.

14

71. As a result of ACI's breach of its fiduciary duties, World Wide has been damaged in the amount of $6,002,883.36, which damages continue to accrue, plus interest thereon to the date of entry of judgment.

72. In conducting itself in the manner alleged herein and in committing the acts alleged herein, ACI acted maliciously and with wanton disregard of the rights of Plaintiffs. By reason thereof, Plaintiffs are entitled to punitive damages against ACI to be determined at trial.

### THIRD CAUSE OF ACTION
### (Conversion)

73. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as though set forth in full herein.

74. Upon information and belief, ACI has wrongfully retained funds paid by the States on Plaintiffs' invoices that should have been transmitted to Plaintiffs.

75. ACI is short-paying, or paying less than the full amount of Plaintiffs' invoices to Plaintiffs, without explanation and without any statement as to what issues with Plaintiffs' invoices would have resulted in a short payment from the States.

76. ACI has refused to provide any documentary evidence or explanation for its short-payment of Plaintiffs' invoices.

77. ACI's conversion of Plaintiffs' money, in the amount to be determined at trial, has deprived Plaintiffs of their property by its unauthorized act in assuming dominion, despite Plaintiffs' demand for its return.

78. As a result of ACI's conversion, Plaintiffs have been damaged in an amount to be determined at trial, plus interest thereon to the date of entry of judgment and punitive damages.

### FOURTH CAUSE OF ACTION
### (Accounting in Equity)

79. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as though set forth in full herein.

80. In light of the acts and omissions of ACI in its invoicing and collection of receipts described herein, pursuant to Virginia Code § 8.01-31 and common law, Plaintiffs are entitled to an accounting of ACI and its agent(s)' actions on behalf of the team members in invoicing and collections, including a discovery of the books and records relating to ACI's invoicing, collection efforts, receipts, and disbursements.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

81. Plaintiffs repeat and reallege each allegation in the preceding paragraphs as though set forth in full herein.

82. Pursuant to the CTA, Plaintiffs are entitled to separately invoice the States of Washington and Idaho directly for the services rendered by the Plaintiffs.

83. Plaintiffs have requested that Defendant relinquish its invoicing and collection role to Plaintiffs to allow Plaintiffs to perform their own invoicing pursuant to the CTA, but Defendant has refused, and Defendant has refused to acknowledge Plaintiffs rights pursuant to the CTA.

84. Accordingly, there is an actual controversy and Plaintiffs request the Court enter an Order holding that the CTA is enforceable between the parties and that Plaintiffs are entitled to perform their own invoicing and collection functions pursuant to the CTA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs AB Staffing Solutions, LLC and Bay Area Anesthesia, LLC, d/b/a World Wide Medical, LLC respectfully pray for a judgment against Asefi Capital, Inc., d/b/a ACI Federal as follows:

1. A preliminary and permanent injunction requiring ACI to permit Plaintiffs to submit their invoices directly to State contracting entities, as Plaintiffs are entitled pursuant to the CTA;

2. A preliminary and permanent injunction requiring ACI to place all receipts from the States into escrow, to be distributed pursuant to the team members' agreement;

3. An Order requiring ACI to provide a full and complete accounting of its and its agent(s)' actions on behalf of the team members in invoicing and collections, including a discovery of the books and records relating to ACI's invoicing, collection efforts, receipts, and disbursements;

4. A declaration that Plaintiffs are entitled to perform their own invoicing and collection functions pursuant to the CTA;

5. An award of damages in an amount to be proven at trial, but not less than $60,000,000;

6. An award of consequential damages in an amount to be determined at trial;

7. An award of punitive damages in an amount to be determined at trial;

8. Pre and post judgment interest at the highest applicable legal or statutory rate;

9. Taxing the costs of this action to Defendants; and

10. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues raised herein and so triable.

Respectfully submitted, this the 20th day of January, 2022.

                AB STAFFING SOLUTIONS, LLC
                and BAY AREA ANESTHESIA, LLC, d/b/a
                WORLD WIDE MEDICAL, LLC


By:    /s/ Joseph E. Blackburn, III_____
           Joseph E. Blackburn, III (VSB # 81871)
           Brendan D. O'Toole, Esq. (VSB # 71329)
           Williams Mullen
           200 South 10th Street, 16th Floor
           Richmond, VA 23219
           Telephone No.: (804) 420-6588
           Facsimile No.: (804) 420-6507
           jblackburn@williamsmullen.com
           botoole@williamsmullen.com
           *Counsel for Plaintiffs*

46918910_11

## VERIFICATION

I, Evan Burks, on behalf of AB Staffing Solutions, LLC, being duly authorized to do so, have read the foregoing Verified Complaint and affirm under penalty of perjury that the factual allegations contained therein are true and correct to the best of my knowledge, information and belief.

Dated: January 20, 2022

Evan Burks
President
AB Staffing Solutions, LLC


I, Martha White, on behalf of Bay Area Anesthesia, LLC, d/b/a World Wide Medical, LLC, being duly authorized to do so, have read the foregoing Verified Complaint and affirm under penalty of perjury that the factual allegations contained therein are true and correct to the best of my knowledge, information and belief.

Dated: January 20, 2022

Martha White
President
Bay Area Anesthesia, LLC, d/b/a
World Wide Medical, LLC